■ BED N' BATH OF SPRING VALLEY, INC., Appellant, v SPRING VALLEY PARTNERSHIP et al., Respondents.—Levine, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Lefkowitz, J.), entered April 29, 1991 in Rockland County, which, *inter alia,* granted defendants' cross motion to dismiss the complaint on the ground of estoppel.

In December 1986, plaintiff entered into a lease, effective May 1, 1988, to occupy some 13,000 square feet of space as a retail store in a shopping center which was opening in Rockland County. The owner of the prospective shopping center with whom plaintiff entered into the lease was Hopf Drive Associates. The lease provided for payment of a fixed minimum rental and as additional rental, *inter alia,* payment of

the tenant's pro rata share of "Shopping Center Operating Cost", which was defined in the lease to include "management fees", modified by the inserted phrase, "which directly benefit the shopping center and are normal and usual for the market area". Section 2.14 (a) of the lease and paragraph 3 of an addendum to the lease contained provisions for determining plaintiff's pro rata share of management fees and other operating costs based upon the fractional share of shopping center space occupied by plaintiff's store.

In December 1988, Hopf Drive Associates sold the shopping center to defendant Spring Valley Partnership. Several days prior to the sale, plaintiff executed an estoppel certificate to the buyer containing various representations, paragraph 8 of which related to plaintiff's obligation to pay a share of shopping center operating costs. Paragraph 8 recited that this obligation included the tenant's responsibility to pay "its pro rata share of all costs and expenses for management fees and management personnel (which directly benefit the Shopping Center and are normal and usual for the market area), which costs and expenses are equal to four (4%) percent of the gross rentals paid to the Landlord under all leases of the Premises".

Plaintiff brought this declaratory judgment action (and application for a preliminary injunction pursuant to *First Natl. Stores v Yellowstone Shopping Ctr.,* 21 NY2d 630) to resolve a dispute between it and the present owner over the proper amount of plaintiff's pro rata share of management fees under the lease. The complaint alleged that plaintiff's obligation is controlled by the language in the lease limiting management fees to those "which * * * are normal and usual for the market area". It is further alleged that the normal and usual management fees for similar shopping centers in the market area are 15% of the shopping center's "Common Area Maintenance" (hereinafter CAM) charges, and that the share of management fees sought by the owner here is 59% of the CAM charges.

Prior to answering the complaint, defendants moved to dismiss (apparently under CPLR 3211 [a] [1]) on the grounds that plaintiff is bound by its representation in the tenant's estoppel certificate that normal and usual management fees "costs and expenses are equal to four (4%) percent of the gross rentals" under all the leases at the shopping center, and that the additional rental charge by defendant for this item actually represents plaintiff's pro rata share of such management fees, calculated as provided in section 2.14 (a) of the lease and

paragraph 3 of its addendum. Supreme Court held in substance that the estoppel certificate clearly and unambiguously defined "normal and usual" management fees as 4% of the aggregate gross rental of all leases of the entire shopping center. Therefore, the court held, plaintiff was estopped from claiming that normal and usual management fees were some lesser amount. Plaintiff appeals from the judgment dismissing the complaint upon such estoppel.

We agree with Supreme Court that the dispositive provision in resolving the dispute between the parties is paragraph 8 of the estoppel certificate, which is binding upon plaintiff insofar as it defines what constitutes normal and usual management fees (see, *Hammelburger v Foursome Inn Corp.,* 54 NY2d 580, 587). Plaintiff has not alleged in its submissions any of the grounds for invalidating the estoppel certificate (see, *supra,* at 586-588). We also agree with Supreme Court that the language of paragraph 8 of the estoppel certificate clearly and unambiguously defines plaintiff's pro rata share of management fee costs and expenses as 4% of the gross rentals on the entire shopping center. Plaintiff's contrary interpretation, i.e., that normal and usual management fees are defined in paragraph 8 of the estoppel certificate as 4% of the gross rental solely for the premises demised under plaintiff's lease, is clearly untenable. First, it is inconsistent with or, at the very least, puts an unusually strained interpretation on the phrase "gross rentals paid to the Landlord under *all* leases of the Premises" (emphasis supplied). Second, concededly, plaintiff's construction of paragraph 8 of the estoppel certificate would use the 4% gross rentals on the premises demised to plaintiff to fix directly the amount due from plaintiff to defendant as a management fee. However, under paragraph 8 of the estoppel certificate, plaintiff is not liable for the full "costs and expenses" equal to the stated percentage of gross rentals. Rather, plaintiff's obligation is to pay "its *pro rata* share of all *costs and expenses* for management fees * * * which *costs and expenses* are equal to (4%) of the gross rentals * * * under all leases of the Premises" (emphasis supplied).

Thus, it seems clear beyond any doubt that the percentage of gross rentals referred to in paragraph 8 of the estoppel certificate does not fix plaintiff's management fee obligation, but serves instead to determine the total amount of management fees for the shopping center, plaintiff's pro rata portion of which is then to be determined by applying the formulas contained in section 2.14 (a) of the lease as modified in

paragraph 3 of the addendum to the lease. Plaintiff's construction of paragraph 8 of the estoppel certificate would, therefore, deprive of any meaning the reference in that paragraph to the tenant's "pro rata share" of management fee costs and expenses, and would also render unnecessary the provisions in the lease and addendum for calculating plaintiff's pro rata share of, *inter alia,* management fees on the entire shopping center.

Contrariwise, defendants' construction of paragraph 8 of the estoppel certificate as defining usual and normal management fees as 4% of the aggregate gross rentals for the entire shopping center permits application of all the language in paragraph 8 and of the provisions of the lease regarding determination of plaintiff's share of shopping center operating costs. Under the familiar canon of construction preferring an interpretation of an instrument that avoids inconsistencies and gives meaning to all of its terms, Supreme Court properly adopted defendants' construction of paragraph 8 of the estoppel certificate *(see, Mir v Mir,* 135 AD2d 690, 691; *Browning-Ferris Indus. v County of Monroe,* 103 AD2d 1040, *affd* 64 NY2d 1046; *Robshaw v Health Mgt.,* 98 AD2d 986) and, thus, correctly resolved the merits of this declaratory judgment action against plaintiff. The proper course, however, was not to dismiss the complaint but rather to issue a declaration in favor of defendant *(see, Maurizzio v Lumbermens Mut. Cas. Co.,* 73 NY2d 951, 954).

Weiss, P. J., Mahoney, Casey and Harvey, JJ., concur. Ordered that the judgment is modified, on the law, with costs to defendants, by reversing so much thereof as dismissed the complaint; it is declared that the usual and normal management fees are 4% of the aggregate gross rentals for the entire shopping center; and, as so modified, affirmed.